436 P.2d 790

**TEAMSTERS LOCAL UNION NO. 222 and Kendel S. Twitchell, Plaintiffs and Appellants,**

**v.**

**W. S. HATCH COMPANY, a Utah corporation, Defendant and Respondent.**

**No. 10943.**

Supreme Court of Utah.

Jan. 23, 1968.

A. Park Smoot, Salt Lake City, for appellants.

Mark K. Boyle, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a judgment for defendant on its counterclaim. Affirmed with costs to defendant.

Plaintiff sued defendant for certain benefits it claimed for its members under a three-year labor-management contract.

Three causes of action were asserted. All issues had been settled and resolved before trial except one, which involves only the interpretation of one, or perhaps two, provisions of the admittedly executed contract. These provisions are as follows:

Article XX, Section 2, provides:

Effective October 1, 1961, the Company shall contribute to a jointly administered trust fund the sum of $16.50 per month for each regular employee covered by this agreement, who has worked eighty (80) hours or more in the preceding month and thereafter shall continue to pay $16.50 for each such employee who works eighty (80) hours or more during each preceding month, *for the duration of this agreement.* [Emphasis added.] Article XXXI provides:

This agreement shall be effective October 16, 1961, through September 30, 1964. * * *

██ It is urged by the Teamsters that these provisions covered benefits for those workers employed or unemployed in October 1964 and that Hatch had not paid its contribution to the fund mentioned for October 1964, and expressed such contention in a letter to Hatch. The latter's manager, after an obvious spleenful temporary aberration, penned "NUTS" on the face of the controversial communication. Nonetheless a check was sent to the Teamsters for $1567.50, the amount demanded. This was a 37th payment under a contract running only for 36 months. Thus, the counterclaim here for an overpayment. Such claim was sustained by the trial court, with which we inescapably must concur.

The difficulty seems to stem from the fact that one side claims benefits at the front end of the contract, i. e., for those working part time in September 1961, and for those working part time in September 1964. This would amount to an extra September and an extra contribution not called for under the contract terms. Under those terms September 1961 workers were covered by the October contribution, but only a renewal of the contract beyond the September 30, 1964, termination date would obligate Hatch to pay into the fund another contribution for September 1964 employees. There was no such renewal and hence no contract covering the situation.

██ A point was made on appeal that the payment was made to a fund created under the contract, administered by nominees of both the Teamsters and Hatch, and that therefore Hatch had no standing to counterclaim and recover the payment. There was no contention as to this aspect of the case made in the pleadings, and it is certainly negated and confined by the pretrial order, agreed to by the parties, to simply one question: "Is the final payment made by the defendant to the Fund for all of Hatch's employees for the month of Sep-

tember or October, 1964?" Hence the point urged is too late on appeal and is dehors the issues stipulated to be tried.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

ELLETT, Justice (dissenting).

I dissent. The record shows that the Teamsters Union, believing defendant owed another payment to a pension fund, demanded that the payment be made. The defendant's agent wrote "Nuts" across the letter and returned it to the plaintiff union. Thereafter the defendant paid into the fund the sum of $1567.50 and now seeks to hold the Teamsters for the amount it thus voluntarily paid.

When payment is thus voluntarily made, it cannot be recovered, either from the recipient or from the one who demanded that the payment be made.

The law is set forth in 40 Am.Jur., Payment, as follows:

> § 155. Payments which are voluntarily made cannot be recovered, but recovery may be had of payments made as the result of duress, fraud, mistake, or failure of consideration. In fact, it has been said that these are the only grounds upon which a suit to recover back money paid may be maintained.
>
> \*     \*     \*     \*     \*     \*

§ 174. The mere commencement of legal proceedings to recover a demand does not, in the absence of any actual seizure of the person or goods of the alleged debtor, or of any menace of such seizure, constitute such compulsion as to enable the defendant to recover a payment made under the influence thereof, for he has an ample remedy by way of defense to the suit, and if he pays the demand instead of defending the suit, he cannot recover the amount so paid. A fortiori, a mere threat of legal proceedings does not constitute such compulsion as to enable a person paying money under the influence of such menace to recover it. Thus, it has been held that where the defendant in a suit, with full knowledge of the facts, voluntarily pays part of the demand, and judgment is rendered against him for the balance, which is conclusively reversed on appeal, he cannot recover the part so paid. Likewise, the mere apprehension or probability of a civil proceeding to enforce a claim does not render a payment thereof involuntary in the sense that it can be recovered. The reason for the rule is almost self-evident. If there is in fact a cause of action when the threat is made, the plaintiff, by bringing suit, would only enforce a legal right; if there was no cause of action or demand for more than is due, the party threatened should exercise the ordinary degree of firmness which the law pre-

sumes every man to possess, and meet the issue of the unjust suit. One cannot be heard to say that he had the law with him, but feared to meet his adversary in court. It is only when he has no chance to be heard that he can pay and afterward recover. * * *

I think the case should be reversed and the trial court ordered to enter judgment for the plaintiff and against the defendant on the counterclaim. The plaintiff should have its costs.